2021 IL App (2d) 190402-U
No. 2-19-0402
Order filed October 27, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CM-726 |
| YOLANDA MOFFETT, | ) ) | Honorable Alice C. Tracy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*: Defendant's remarks in allocution at sentencing for domestic battery of her daughter did not constitute a clear claim of ineffective assistance of counsel such that the trial court was required to conduct a *Krankel* inquiry. In remarking that she told counsel about two witnesses who could have rebutted her daughter's testimony as to the time of the incident, defendant did not clearly express dissatisfaction with counsel's performance. Nor could the other remark at issue be construed as a claim that counsel should have argued that the daughter had a motive to fabricate the allegation of abuse.

¶ 2   Following a jury trial in the circuit court of Kane County, defendant, Yolanda Moffett, was

found guilty of domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2018)) and sentenced to a 348-

day jail term. She argues on appeal that the trial court failed to conduct a proper inquiry into her *pro se* claim of ineffective assistance of counsel. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     At trial, defendant's daughter, Meliscent Moffett, testified that at about 11 p.m. on March 21, 2018, she and defendant got into an argument because Meliscent had not cleaned the kitchen. Defendant told Meliscent to bring her an extension cord. Meliscent complied. Defendant hit the back of Meliscent's legs with the extension cord more than 10 times. Meliscent tried to move away, but defendant grabbed her and hit her more. The injuries bled, and Meliscent bandaged them. When Meliscent went to school the following day, she told school staff members what had happened, and she visited the school nurse and showed the nurse her injuries. The police were contacted, and an officer photographed the injuries to Meliscent's leg. Meliscent denied that she had fallen over a Christmas tree.

¶ 5     Several officers spoke with defendant. She admitted that she had threatened Meliscent with an extension cord, but she denied hitting Meliscent with it. One of the officers who spoke with defendant testified that he did not recall defendant saying anything about Meliscent tripping over a Christmas tree. His report did not mention a Christmas tree.

¶ 6     Defendant testified that she and Meliscent had been having disagreements about Meliscent's failure to follow the "house rules." On the night of the incident, they argued about the clutter in the house. Defendant was blind, and the clutter interfered with her ability to "see" with her hands. Defendant asked Meliscent to hold her hand. Defendant threatened Meliscent with an extension cord but did not hit her. Meliscent pulled her hand away and moved back. As she did so, she tripped over a disassembled artificial Christmas tree on the floor. When she spoke with police, defendant told them about the Christmas tree.

¶ 7    The jury found defendant guilty of domestic battery and the trial court denied defendant's posttrial motion.  During her statement in allocution at sentencing, defendant stated, "I've got two people whom I told my attorney could verify that this argument happened about 8:30 in the evening and by 9:00, I was on the phone with one lady and off the phone with the other one at 10:05. And I went to bed after that."  Defendant also stated:

> "I tried to explain to the attorney [that Meliscent] wants her freedom so she can go live with her girlfriend.  Now, whether she's straight, bi, lesbian, or gay, I really don't care; but whoever she is with, I want to be a nice person, a decent person, an honorable person with some morals.  And this young lady is grooming [Meliscent] for prostitution[,] hence the naked photos, hence the Lover's Lane, hence the S&M behavior, et cetera.  I don't condone the relationship.  I never will.  And [Meliscent's] behavior around the home was … yeah. And to think of my own daughter being able to, wow, do the things that she's done, it—it devastates me."

¶ 8                                II. ANALYSIS

¶ 9    Defendant argues on appeal that her statements in allocution were *pro se* claims of ineffective assistance of counsel and that, pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny, the trial court was obligated to determine whether defendant was entitled to new counsel to represent her in connection with the claims.  In *Krankel*, our supreme court held that new counsel should have been appointed to represent a defendant who raised a *pro se* posttrial claim of ineffectiveness of counsel.  Our supreme court has since held, however, that the right to new counsel is not automatic.  *People v. Jolly*, 2014 IL 117142, ¶ 29.  As stated in *People v. Moore*, 207 Ill. 2d 68, 77-79 (2003):

"[W]hen a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed. ***

The operative concern for the reviewing court is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel. [Citation.] During this evaluation, some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim. Trial counsel may simply answer questions and explain the facts and circumstances surrounding the defendant's allegations. [Citations.] A brief discussion between the trial court and the defendant may be sufficient. [Citations.] Also, the trial court can base its evaluation of the defendant's *pro se* allegations of ineffective assistance on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face. [Citations.]"

¶ 10 At issue here is whether defendant's remarks during allocution constituted *pro se* claims of ineffective assistance of counsel, thus triggering the inquiry described above. To trigger the trial court's duty to make a *Krankel* inquiry, the defendant must present "a clear claim asserting ineffective assistance of counsel, either orally or in writing." *People v. Ayres*, 2017 IL 120071, ¶ 18.

¶ 11 *People v. King*, 2017 IL App (1st) 142297, cited by the State is instructive. In *King*, the defendant was convicted of home invasion and other offenses in connection with an incident in

which the defendant entered her mother's home and attacked her sister. The defendant's mother had custody of the defendant's two children and the defendant evidently planned to take the children. During sentencing, the following exchange occurred:

" 'THE DEFENDANT: There was no evidence to support my end of this deal. I don't understand why this happened at all. My sister took my dog, broke into my house. She took my dog.

THE COURT: [Defendant], I will caution you. You already testified.

THE DEFENDANT: There was one call. I mean I have a witness.

THE COURT: I considered your testimony.

THE DEFENDANT: A witness wasn't called.

THE COURT: If you have any questions—

THE DEFENDANT: This is ridiculous.

* * *

THE DEFENDANT: I don't understand this at all. She is—she has a background.

THE COURT: Very well.

THE DEFENDANT: She is on medication.' " *Id.* ¶ 10.

¶ 12    After the parties made arguments in aggravation and mitigation, the court asked the defendant if there was anything she wished to tell the court. The defendant responded:

"I don't know what else to say. These are my kids. It was like domestic insanity going on. I have like a little 13 year old that wanted to run around with my 21-year old sister.

I asked her to pull her medical background, her criminal background. She has heroin possession charges.

- 5 -

> I didn't want her in the house with my sister. We were fighting like a month straight. She robbed my house. She took my dog. She has my daughter turned against me." *Id.* ¶ 11.

¶ 13    The defendant argued that these remarks raised a claim of ineffective assistance of counsel. The *King* court disagreed. The court noted that the defendant never stated, either orally or in writing, that counsel was ineffective. *Id.* ¶ 18. The defendant's reference to a witness who was not called to testify did not constitute a claim of ineffectiveness. The court noted that it was not clear whether the witness had observed the events at issue in the case or the alleged break-in at the defendant's home and the theft of her dog. *Id.* The court concluded that although the defendant's statement made clear that she was upset with her sister, it was not clear that the defendant was complaining about counsel. *Id.* Although the defendant's statement that she asked "her" to pull "her" medical and criminal background presumably meant that the defendant asked counsel to investigate her sister, the court noted that defendant "did not specifically state that she was unhappy with trial counsel's representation." *Id.* ¶ 20.

¶ 14    Similarly, here, defendant did not make a clear claim of ineffective assistance of counsel. Although defendant contended that she told counsel that she had witnesses who could establish that her argument with Meliscent took place earlier than Meliscent testified that it did, she did not express any dissatisfaction with counsel's performance. As *King* teaches, vague references to evidence not presented at trial do not amount to clear claims of ineffectiveness.

¶ 15    Defendant contends that her remark that she told her lawyer that Meliscent wanted to live with her girlfriend was a claim that counsel was ineffective for failing to argue that Meliscent had a motive to fabricate the allegation of abuse. That is an overly generous reading of defendant's remark, which simply reflects defendant's frustration with her relationship with Meliscent and

with Meliscent's personal life.  Again, defendant did not express dissatisfaction with her attorney's performance.  The remark does not translate to a claim of ineffective assistance of counsel.  We therefore conclude that no duty of inquiry was triggered under *Krankel*.

¶ 16                                   III. CONCLUSION

¶ 17    For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

¶ 18    Affirmed.